1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                         CENTRAL DISTRICT OF CALIFORNIA

10   ARTHUR MORALES,                    )  Case No. CV 09-2494-PJW
                                        )
11              Plaintiff,              )
                                        )
12       v.                             )  MEMORANDUM OPINION AND ORDER
                                        )
13   MICHAEL J. ASTRUE,                  )
     Commissioner of the                )
14   Social Security Administration,     )
                                        )
15              Defendant.              )
     _____)

16

17                              I. INTRODUCTION

18        Before the Court is Plaintiff's appeal of a decision by Defendant

19   Social Security Administration ("the Agency"), denying his application

20   for Disability Insurance benefits ("DIB").  Plaintiff claims that the

21   Administrative Law Judge ("ALJ") erred when he: 1) did not find that

22   Plaintiff's right knee ailment amounted to a severe impairment;

23   2) failed to properly consider the opinions of the treating

24   orthopedists; and 3) determined that Plaintiff's statements regarding

25   his symptoms were not fully credible.  (Joint Stip. at 4-5, 9-13, 16-

26   18.)  For the following reasons, the ALJ's decision is reversed and

27   the case is remanded for further proceedings.

28

II. SUMMARY OF PROCEEDINGS

Plaintiff applied for DIB on November 18, 2005, alleging that he had been unable to work since July 23, 2004, because of lower back pain, carpal tunnel syndrome, pain in his right knee, and sleep apnea. (Administrative Record ("AR") 163-65, 199.)  The Agency denied the application initially and on reconsideration.  (AR 118-23, 125-29.) Plaintiff then requested and was granted a hearing before an ALJ.  (AR 131, 133-34.)  Plaintiff appeared with counsel and testified at the hearing on January 30, 2008.  (AR 89-117.)

On March 28, 2008, the ALJ issued an unfavorable decision, finding that Plaintiff had not been disabled at any time since July 23, 2004.  (AR 7-19.)  Plaintiff appealed to the Appeals Council, which denied review.  (AR 1-5.)  Plaintiff then commenced the instant action.

III. DISCUSSION

1.   The ALJ Did Not Err At Step Two

In his first claim, Plaintiff contends that the ALJ erred when he failed to find that Plaintiff's right knee condition was a severe impairment at step two.  Plaintiff points out that, in 2004, treating orthopedist Dennis Ainbinder diagnosed a torn medial meniscus, made clinical findings of tenderness in the right knee, and opined that Plaintiff would be precluded from all prolonged walking.  (Joint Stip. at 5.)  For the following reasons, the Court finds that this claim does not warrant remand or reversal.

At step two of the sequential evaluation process, the ALJ is tasked with identifying a claimant's "severe" impairments.  20 C.F.R. § 404.1520(a)(4)(ii).  A severe impairment is one that significantly limits an individual's physical or mental ability to do basic work

2

activities.  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); 20 C.F.R. § 404.1521(a).  The governing regulations define "basic work activities" as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. § 404.1521(b).  Under Social Security Ruling ("SSR") 85-28, a "determination that an impairment(s) is not severe requires a careful evaluation of the medical findings which describe the impairment(s) and an informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities[.]"  The step-two inquiry is intended to be a "de minimis screening device."  *Smolen*, 80 F.3d at 1290 (citing *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987)).

The record supports the ALJ's implicit finding that Plaintiff's 2004 knee injury did not significantly limit his ability to work in 2008.  On August 16, 2004, orthopedic surgeon Richard Vanis diagnosed "right knee medial meniscal tear."  (AR 252.)  Dr. Vanis recommended an MRI of the right knee.  (AR 256.)  On November 11, 2004, Dr. Ainbinder examined Plaintiff, noting tenderness over the medial joint line and "pain on varus stress of the right knee[,]" but also that Plaintiff walked with a normal gait.  (AR 277.)  Dr. Ainbinder diagnosed a torn medial meniscus and opined that Plaintiff would be restricted in prolonged walking, kneeling, and climbing and descending stairs.  (AR 281.)

After 2004, however, the medical records tell a different story.  Plaintiff apparently did not seek medical attention for his right knee in 2005.  In February 2006, Dr. Zewdu Gebreyes of HealthCare Partners conducted a complete physical examination and concluded that Plaintiff had no acute problems.  (AR 318-19.)  The notes from follow-up visits

at HealthCare Partners in 2006 and 2007 do not mention right knee complaints. (AR 338-46, 456-57.)

In May 2006, consultative internist Seung Ha Lim examined Plaintiff. (AR 321-25.) Dr. Lim noted that Plaintiff presented a "history of right knee pain since 2004," but found a normal range of motion in Plaintiff's right knee. (AR 321.) Dr. Lim opined that Plaintiff could stand, walk, or sit for about six hours in an eight-hour workday with appropriate breaks. (AR 324.) Dr. Lim also opined that Plaintiff would not be limited in operating foot controls, but that he would be restricted to only occasional climbing and stooping. (AR 325.) Similarly, a state agency reviewing physician completed a physical residual functional capacity assessment on June 20, 2006, opining that Plaintiff could stand, walk, or sit for about six hours in an eight-hour workday, but would be limited to only occasional climbing, balancing, stooping, kneeling, crouching, and crawling. (AR 330-31.)

In a January 2007 chart note, Dr. Vanis noted that he had last seen Plaintiff two years before. (AR 22.) Though Dr. Vanis recorded Plaintiff's complaint of right leg stiffness down to his knee, subsequent progress notes dated February 22 and April 2, 2007 do not mention any right knee symptoms or complaints. (AR 20-21.) All of the disability "certifications" prepared by Dr. Vanis during this timeframe set forth that, in the doctor's opinion, Plaintiff was unable to work because of back pain, only. (AR 24-26.)

In his decision, the ALJ gave substantial weight to Dr. Ainbinder's opinion "as it related to [Plaintiff]'s medical condition in 2004[.]" (AR 17.) The ALJ found that, after that date, no objective evidence established the existence of a right-knee

4

impairment and Plaintiff's complaints of right-knee pain were minimal and sporadic.[1] The record supports this view. There is very little if any evidence in the record supporting Plaintiff's claim that in March 2008 the lingering effects of his 2004 knee injury limited his ability to perform basic work activities. As such, the ALJ's finding is affirmed. *See also Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) (explaining 1) that the Agency's findings must be affirmed if supported by substantial evidence and "inferences reasonably drawn from the record," and 2) "if evidence exists to support more than one rational interpretation," the Court must defer to the Agency's decision).

Finally, the Court notes that the ALJ appears to have included the limitations allegedly caused by Plaintiff's right knee condition in his step four residual functional capacity determination. (AR 14-17.) Thus, any error he may have committed at step two was harmless. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (holding that ALJ's error in finding an impairment non-severe at step two was harmless when ALJ considered limitations resulting from impairment at step four) (citing *Stout v. Comm'r*, *Soc. Sec. Admin.*, 454 F.3d 1050, 1054-55 (9th Cir. 2006)). For the foregoing reasons, this claim does not warrant remand or reversal.

2.  The Treating Orthopedists' Opinions

In his second claim of error, Plaintiff contends that the ALJ erred by failing to provide legally sufficient reasons for rejecting

---

[1] The ALJ erroneously found that x-rays of the right knee taken at the time of a May 2006 internal evaluation were normal. (AR 16.) The referenced x-ray, Plaintiff's lumbar spine, shows mild degenerative disc disease. (AR 326.)

5

Dr. Ainbinder's 2004 opinion that Plaintiff's carpal tunnel syndrome severely limited his ability to perform various activities and Dr. Vanis's opinion that Plaintiff's carpal tunnel syndrome and lower back condition limited his ability to work. (Joint Stip. at 9-12.) For the following reasons, the Court concludes that the ALJ erred with respect to Dr. Vanis's opinion concerning Plaintiff's back impairment.

As an initial matter, the ALJ was not required to provide a justification for rejecting Dr. Ainbinder's 2004 opinion. The ALJ gave substantial weight to that opinion as it related to Plaintiff's condition *in 2004*, evidently accepting the existence of a right knee injury and carpal tunnel syndrome at that time. (AR 17.) Because the ALJ's determination that Plaintiff's impairments did not cause greater limitations in 2005 through 2007 did not conflict with Dr. Ainbinder's 2004 opinion, the ALJ was not required to articulate reasons for rejecting it. *See Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

Nor does the evidence establish that Plaintiff's right knee impairment (as previously discussed) or his carpal tunnel syndrome persisted at a severe level for at least twelve consecutive months at any time after 2004. The ALJ noted that electrodiagnostic studies showed evidence of carpal tunnel syndrome in September 2004. (AR 16, 297-99.) Thereafter, on November 11, 2004, Dr. Ainbinder noted Plaintiff's complaints of continued pain on flexion and extension of both wrists, as well as a positive carpal tunnel sign and Phalen's sign. (AR 275-76). On that date, Dr. Ainbinder opined that Plaintiff had lost 50 percent of his ability to grip in both hands and assessed a 50 percent loss in Plaintiff's pre-injury capacity for lifting,

1  pushing, pulling, grasping, pinching, holding, fine manipulation, and
2  torquing.  (AR 277, 281.)

3        The record contains no evidence that Plaintiff complained of or
4  sought treatment for carpal tunnel syndrome or wrist or hand pain in
5  2005.  Nor did Dr. Gebreyes identify or report any problems with
6  Plaintiff's hands or wrists upon examination in February 2006.  (AR
7  318-19.)  In May 2006, though examining internist Lim noted that
8  Plaintiff presented with a history of carpal tunnel syndrome and
9  complained of hand pain and weakness with swelling and stiffness of
10 the hands, the tests Dr. Lim performed showed no signs of carpal
11 tunnel syndrome.  Dr. Lim concluded that Plaintiff would not be
12 restricted in the use of his hands or arms, including in fine
13 manipulation.  (AR 321, 324, 325.)

14       On February 27, 2007, Plaintiff complained of "worsening" carpal
15 tunnel syndrome to Dr. Vanis.  (AR 21.)  On April 2, 2007, Plaintiff
16 told Dr. Vanis that his condition had become more severe and that he
17 was "dropping things."  (AR 20.)  Though Dr. Vanis indicated in a
18 typewritten chart note on that date that surgery would be performed,
19 an unsigned handwritten note written next to the entry states: "No.
20 Art[hur]: The risk is too high to operate for carpool [sic] tunel
21 [sic][,] same for lower back."  (AR 20.)

22       Additionally, the ALJ relied on the opinions of the state agency
23 reviewing physician and the examining physician in concluding that
24 Plaintiff's carpal tunnel syndrome would not limit use of his hands or
25 arms.  (AR 16.)  This was legitimate.  Dr. Lim's opinion, which was
26 based on his own independent examination findings, constituted
27 substantial evidence to support the ALJ's residual functional capacity
28 determination.  *See Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir.

7

1995) ("Where the opinion of the claimant's treating physician is
contradicted, and the opinion of a nontreating source is based on
independent clinical findings that differ from those of the treating
physician, the opinion of the nontreating source may itself be
substantial evidence; it is then solely the province of the ALJ to
resolve the conflict.")  Finally, to the extent that the ALJ rejected
Dr. Vanis's 2007 opinion regarding Plaintiff's carpal tunnel syndrome,
he was entitled to do so because the opinion was based exclusively on
Plaintiff's own accounts, the credibility of which the ALJ discounted,
as further discussed below.  *See Tommasetti v. Astrue*, 533 F.3d 1035,
1041 (9th Cir. 2008) ("An ALJ may reject a treating physician's
opinion if it is based 'to a large extent' on a claimant's self-
reports that have been properly discounted as incredible.") (citation
omitted).  In light of this record, the ALJ's finding that the "only
objective medical evidence" diagnosing carpal tunnel syndrome was
dated September 2004, (AR 16), is supported by substantial evidence
and will not be disturbed.

     With respect to Plaintiff's lower back impairment, however, the
Court concludes that the ALJ erred.  In his decision, the ALJ noted
Dr. Vanis's December 10, 2007 opinion that Plaintiff "is disabled at
this time and is not employable because of the status of the recurrent
neurological involvement post laminectomy at L5-S1."  (AR 16, 484.)
The ALJ understood Dr. Vanis to be referring to the lower back surgery
that Plaintiff underwent in May 2002.  (AR 17.)  In rejecting Dr.
Vanis's conclusion that Plaintiff was disabled as a result of his back
condition, the ALJ stated that the record was not clear as to whether
Plaintiff's subjective symptoms rendered him unable to work, and found
that "[t]he MRI evidence is the only diagnostic test that showed

anything other than mild degenerative disease." (AR 17.) And, as to those MRI results, the ALJ noted that the radiologist "suggested that further testing be made to determine whether the MRI is showing a recurrent disk bulge or scar tissue from the previous surgery in 2002," but that no such testing had been conducted. (AR 17.)

As an initial matter, the ALJ was entitled to reject Dr. Vanis's conclusion that Plaintiff's lower back condition rendered him disabled and unemployable because that was not the doctor's role. *See Batson,* 359 F.3d at 1195 (noting that treating physician's opinion is "not binding on an ALJ with respect to the . . . ultimate determination of disability."); 20 C.F.R. § 404.1527(e)(3); *see also* SSR 96-5p (stating that opinion that claimant is disabled, "even when offered by a treating source, can never be entitled to controlling weight or given special significance"). Nevertheless, the ALJ did not provide legitimate reasons for rejecting Dr. Vanis's opinion that Plaintiff "has pain in his lower back and has difficulty ambulating[,]" and has "[d]ifficulty bending forward and standing erect because of low back pain." (AR 483.) Furthermore, the ALJ's other reason for rejecting Dr. Vanis's opinion--that it was based almost exclusively on Plaintiff's subjective complaints, was not "consistent with the medical evidence as a whole," and was not supported by "adequate rationale" (AR 17)--are not supported by the record.

The record shows that Plaintiff regularly complained of lower back pain after 2004 and there is objective evidence to support his complaints. On May 11, 2006, a radiologist noted that a lumbar spine x-ray showed mild disc space narrowing at L5-S1, and diagnosed mild degenerative disease. (AR 326.) On June 2, 2006, Dr. Gebreyes noted "chronic low back pain," and apparently referred Plaintiff to a

9

neurosurgeon for further evaluation.  (AR 343.)  On August 29, 2006, Dr. Morris at Kaiser Permanente noted Plaintiff's complaint that he had been suffering from chronic lower back pain for nine months.  (AR 390.)  On November 29, 2006, another Kaiser physician, Dr. Patricia Hong, noted Plaintiff's lower back pain and found "point tenderness over lower lumbar paraspinals" and "decreased flexion."  (AR 404.) Additionally, Dr. Vanis noted on December 10, 2007, that Plaintiff had previously undergone epidural injections.  (AR 483.)

The January 23, 2007 lumbar spine MRI referenced by the ALJ showed "narrowing of the disc space at L5-S1 that might be due to previous discectomy.  The possibility of previous left hemilaminectomy cannot be excluded."  (AR 493.)  Dr. Angela Wang, the radiologist, also noted "slight subluxation" and "posterior osteophyte and disc bulging centrally of about 4 to 5 mm.  The possibility of scar tissue cannot be excluded.  Recommend contrast MR examination if clinically indicated.  There is slight indentation of the left emerging nerve root . . . .  There is left slight neuroforaminal narrowing."  (AR 493.)

Even if the above evidence falls short of establishing a disabling back condition, it contradicts the ALJ's findings that Dr. Vanis's opinion was based solely on Plaintiff's subjective complaints and was inconsistent with the medical evidence as a whole.  (AR 17.) Furthermore, the fact that the contrast injection recommended by Dr. Wang to rule out failed back syndrome was not carried out does not undermine the validity of her other findings, namely, that Plaintiff's lumbar spine had disc space narrowing and disc bulging.  At the very least, the ALJ did not provide a sufficiently clear rationale for why he thought that it did.  Because the ALJ did not provide specific and

10

legitimate reasons, supported by substantial evidence, for rejecting

Dr. Vanis's opinion, the matter must be remanded for further

consideration. *See*, *e.g.*, *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir.

2007).

### 3. The Credibility Determination

In his third claim of error, Plaintiff contends that the ALJ

erred in discounting his complaints of pain and other limitations

because he improperly based his ruling on a supposed lack of objective

medical support for those complaints, as well as on other illegitimate

grounds. (Joint Stip. at 16-18.) For the following reasons, the

Court finds that remand is warranted on this issue.

ALJ's are tasked with judging the credibility of witnesses.

Where, as here, a claimant has produced objective medical evidence of

an impairment which could reasonably be expected to produce the

symptoms alleged and there is no evidence of malingering, the ALJ can

only reject the claimant's testimony for specific, clear, and

convincing reasons. *Smolen*, 80 F.3d at 1283-84. In making a

credibility determination, the ALJ may take into account ordinary

credibility evaluation techniques as well as the claimant's daily

activities. *Id.* at 1284.

According to Plaintiff, he is unable to stand for longer than 15

minutes before having to sit down to relieve the pain and cannot hold

things in his hands for longer than five minutes without feeling a

"strong pain" that would cause him to drop things. (AR 103-04, 105.)

He also testified that his CPAP machine did not help his sleep apnea

condition and that he was not sleeping well, causing him to doze off

five or six times during the day. (AR 112-13.) The ALJ found that

Plaintiff's complaints were not credible to the extent that they were

1    inconsistent with the residual functional capacity he assessed, i.e.,
2    light work; sit, stand, and walk up to six hours in an eight-hour
3    workday; and occasionally bend, stoop, twist, balance, climb, and
4    crawl.  (AR 14, 16.)

5        The ALJ gave a number of reasons for discounting Plaintiff's
6    testimony.  First, the ALJ found that the record contained "no work
7    restrictions or residual functional capacity assessments" with regard
8    to Plaintiff's sleep apnea condition.  (AR 16.)  This was an adequate
9    justification, supported by the record, for rejecting the alleged
10   limitations resulting from Plaintiff's sleep apnea.  The record shows
11   that Plaintiff participated in an all-night sleep study on February 3,
12   2003, during which time he was monitored on a CPAP machine, which
13   proved effective.  (AR 373-74.)  Plaintiff was then prescribed a CPAP
14   machine, which helped his condition.  On May 11, 2006, consultative
15   internist Lim noted that Plaintiff reported improvement in his sleep
16   apnea with the use of a CPAP.  (AR 321.)  On August 29, 2006, a
17   treating doctor's progress note stated that Plaintiff was "sleeping
18   fine [with] CPAP."  (AR 390.)  As the ALJ noted, no doctor assessed
19   any functional limitations as a result of Plaintiff's sleep apnea, nor
20   does the record show that Plaintiff ever complained to a doctor that
21   he was falling asleep during the day or that the CPAP was not effect-
22   ive.  Accordingly, the ALJ did not err in questioning Plaintiff's
23   testimony regarding his claimed ailments due to sleep apnea.

24       The ALJ discounted Plaintiff's testimony regarding the
25   limitations allegedly caused by his carpal tunnel syndrome and right
26   knee condition because they were not supported by objective medical
27   evidence and because Plaintiff failed to consistently complain of hand
28   or knee pain to his doctors.  (AR 16.)  As discussed above, Plaintiff

did not appear to seek treatment for carpal tunnel syndrome or knee pain for long stretches of time, and numerous doctors' notes made no mention of these complaints.  In fact, after 2004 there was practically no evidence supporting Plaintiff's claims of hand and knee pain.  Thus, the ALJ was justified in questioning Plaintiff's credibility based on the lack of evidence supporting Plaintiff's claims.  *See*, *e.g.*, *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (affirming ALJ's credibility determination based on both the lack of consistent treatment and the failure to seek treatment).

The ALJ also found that Plaintiff was not credible because there was no evidence to support Plaintiff's allegations regarding lower back pain and limitations.  Here, the Court disagrees.  The ALJ noted that Dr. Vanis did not "impose any functional limitations" in support of his statement that Plaintiff's back pain was disabling.  (AR 17.) As set forth above, however, this is incorrect.  (AR 483.)  Dr. Vanis concluded that Plaintiff's back impairment rendered him disabled.  (AR 484.)

The ALJ concluded that Plaintiff's failure to follow up on the radiologist's suggestion that further testing be done following an MRI undermined his credibility.  Though this may be a valid reason to question a claimant's testimony, it does not eliminate the radiologist's objective findings from the MRI, i.e., that Plaintiff's spine was damaged.  This is particularly true where, as here, the ALJ had already found that Plaintiff's lower back impairment could reasonably be expected to produce his symptoms.  (AR 16.)

The ALJ also relied on the fact that Dr. Vanis noted on February 27, 2007, that Plaintiff's lower back pain and sciatica had markedly improved with conservative treatment.  (AR 17.)  Though this finding

13

is supported by the record, (AR 21), the Court notes that Plaintiff complained to the same doctor of lower back pain two months later and Dr. Vanis opined in December 2007 that Plaintiff's back pain rendered him disabled.  (AR 483-84.)  Thus, it seems, that the ALJ focused on the February 27, 2007 comment that Plaintiff was doing better and ignored comments before and after that he was not.  This was not proper.  *See*, *e.g.*, *Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001) (holding that ALJ's rejection of reviewing physician's opinion was not supported by substantial evidence where ALJ selectively relied on records indicating improvement and ignored others that showed "continued, severe impairment").

Finally, the ALJ questioned Plaintiff's credibility based on the fact that Plaintiff was told by his doctor to lose weight and he failed to do so.  (AR 17.)  Although failure to follow prescribed treatment is a proper basis for an adverse credibility determination, the Ninth Circuit has held that an obese claimant's failure to follow his doctor's recommendation to lose weight, as opposed to his failure to follow "prescribed treatment," may not be used to support an adverse credibility determination.  *Orn*, 495 F.3d at 636-38.

In the end, the Court is left with some valid reasons for questioning Plaintiff's credibility and some invalid reasons for doing so.  The Court is not certain what the ALJ would have concluded had he assessed Plaintiff's credibility based on only the valid reasons.  For this reason, the Court remands the issue to the Agency for further consideration.  *See Carmickle v. Comm'r, Soc. Sec. Admin.,* 533 F.3d 1155, 1162 (9th Cir. 2008) (stating that the "relevant inquiry . . . is whether the ALJ's decision remains legally valid," despite errors in the credibility analysis).

14

1

      4.   <u>Procedural Due Process</u>

2        At the outset of the 2008 administrative hearing, the ALJ told

3 Plaintiff and his counsel that an earlier finding by the Agency that

4 Plaintiff could do no more than sedentary work created a "presumption

5 of disability" as of his 50th birthday (November 6, 2006).  (AR 94.)

6 The ALJ explained that that meant that Plaintiff was disabled as of

7 his 50th birthday and that the hearing was limited to whether he was

8 disabled from July 23, 2004, until then.  (AR 94-95.)  Accordingly,

9 the ALJ directed counsel, repeatedly, to focus on the period between

10 July 23, 2004 and November 6, 2006, (AR 94-95, 101-02, 104, 106-11,

11 113), and counsel obeyed the ALJ's instructions.  At the end of the

12 hearing, the ALJ told Plaintiff: "you can be at least assured that you

13 will receive a partially favorable decision and I will decide whether

14 or not it is fully favorable to you."  (AR 116.)  Thereafter, as has

15 been discussed above, the ALJ found that Plaintiff was not disabled at

16 any time before or after his 50th birthday.

17        Although Plaintiff did not raise the issue as a separate claim in

18 the district court (he did before the Appeals Council (AR 245)), the

19 Court concludes that it is significant enough to raise sua sponte.

20 The Court is troubled by the ALJ's representation to Plaintiff and

21 Plaintiff's counsel that Plaintiff could be assured of a favorable

22 decision for the period following November 6, 2006, onward, based on

23 the Agency's previous finding that he could do no more than sedentary

24 work and the ALJ's change of heart after the hearing ended.  More

25 troubling is the fact that the ALJ based his decision, in part, on a

26 lack of evidence after limiting counsel's focus to the pre-November

27 2006 time frame.

28

Social security claimants are entitled to due process at their administrative hearings. *See generally Richardson v. Perales*, 402 U.S. 389, 401-02 (1971). Telling a claimant that he will be receiving benefits for a certain period and, therefore, should not focus on that period at the hearing and then denying benefits for the same period based, in part, on a lack of evidence establishing disability for that period smacks as being unfair. Whether or not the ALJ's ultimate determination that Plaintiff was not disabled at any time is supported by substantial evidence, Plaintiff was effectively denied a fair hearing when the ALJ convinced him and his counsel that he would rule one way and then ruled another. On remand, the ALJ should fix this problem by telling Plaintiff he will be deemed disabled as of a given date and sticking with that promise, or telling him that the issue is in dispute and allowing him to present whatever testimony and evidence (within reason) he chooses to present on the issue.

5.   Remand is Appropriate

The determination whether to remand for further proceedings or for payment of benefits lies within the discretion of the Court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). In most circumstances in Social Security disability cases, remand is appropriate. *See Moisa v. Barnhart*, 367 F.3d 882, 886-87 (9th Cir. 2004). Remand may be productive where additional proceedings can remedy defects in the original administrative proceedings. *See Celaya v. Halter*, 332 F.3d 1177, 1184 (9th Cir. 2003).

In this case, it is not clear whether Plaintiff could perform work existing in the national and local economy. Because the Court is not in a position to say whether Plaintiff is or is not disabled under the regulations, remand for an award of benefits is not justified.

16

1  *See Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000); *see also*

2  *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (holding that

3  remand for reconsideration of credibility determination may be

4  appropriate).

5                          IV.  CONCLUSION

6       For the foregoing reasons, the Agency's decision is reversed and

7  the case is remanded for further proceedings consistent with this

8  Memorandum Opinion and Order.

9       IT IS SO ORDERED.

10      DATED: <u>June 29, 2010</u>.

11

12                          _____

13                          PATRICK J. WALSH
                            UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  S:\PJW\Cases-Soc Sec\MORALES\Memo_Opinion.wpd

                              17